**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

      v.

ARTFABER SWAILS, et al.,

      Defendants.

REPORT AND
RECOMMENDATION
04-CR-6177

### Preliminary Statement

By Order of Judge David G. Larimer, dated January 11, 2005, all pretrial motions have been referred to this Court pursuant to 28 U.S.C. §636(b)(1)(A)-(B). (Docket #12).  Currently before the Court are motions by defendant Artfaber Swails to suppress (1) the results of three identification procedures used by law enforcement and (2) statements he made to the authorities on the evening of his arrest. (Docket #18).  The Government has filed papers in opposition to the motions. (Docket #24).  A suppression hearing was held on May 9, 2005 and post-hearing briefs were thereafter filed by both sides. The following is my Report and Recommendation as to the defendant's suppression motions.

### Factual Background

1. The Identification Procedures:   The testimony adduced at the suppression hearing revealed that on August 26, 2004, Special Agent John Hayes of the Bureau of Alcohol, Tobacco and Firearms ("ATF")

showed a photo array (Government's Exhibit #1) containing Defendant Swails's photograph to a witness.  See Transcript of May 9, 2005 Suppression Hearing [hereinafter "T"] at 7 (Docket #73).  The array was shown to the witness at the United States Attorney's Office, and Agent Hayes, Investigator Scott Deming, the witness's attorney, and Rochester Police Officer Bernabei were present during the viewing. (T at 8, 11).  Investigator Deming asked whether the witness recognized any of the six photographs in the array and the witness identified photograph #5 as "Fabian."  (T at 9). The witness circled the number 5, wrote "Fabian" over the photograph and signed the form.  (T at 9-10).

Agent Hayes testified that he showed the same photo array to that witness again on November 22, 2004. (T at 11).  Agent Hayes stated that "although the witness initially identified the photograph with the name Fabian and identified that Fabian was an associate involved in certain criminal activities, the witness was not completely forthcoming, both as to the witness's involvement [and] also Mr. Swails's involvement."  (T at 11, 29).  According to Agent Hayes, on November 22, 2004, the witness provided additional information regarding Mr. Swails's criminal activity, and Agent Hayes wanted to confirm that they were discussing the individual who had been previously identified as "Fabian," so he showed the witness the photo array again.  (T at 11).  Agent Hayes and Investigator Deming were present during the second viewing. (T at 12).  The witness confirmed that they were speaking about the person

2

previously identified as "Fabian."   (T at 12).   The witness stated that Fabian had made trips from Rochester to Houston, Texas that involved illegal activity.   (T at 12).

On November 17, 2004, Agent Hayes showed a photo array (Government's Exhibit #2) containing defendant Swails's photograph to another witness. (T at 13-14).   The array was shown to the witness at the United States Attorney's Office, where Agent Hayes and Investigator Scott Deming were present for the viewing. (T at 14).   Agent Hayes asked whether the witness recognized any of the six photographs and the witness identified photograph #5 as "Fabian."   (T at 14).   The witness circled the number 5, wrote "Fabian" over the photograph and signed the form.  (T at 14).  Agent Hayes testified that no one in the room at either viewing suggested or indicated to the witnesses in any way which photograph they should choose.  (T at 10-11, 15).

2.   Swails's Arrest and Interrogation:   Investigator Scott Deming testified that on December 2, 2004, he participated in the execution of a federal arrest warrant for Defendant Swails. (T at 35).   Investigator Deming effectuated the arrest of Swails at the Orleans County Sheriff's Office where he advised Swails of the charges against him.   (T at 35-36).   Swails responded that he "figured this was coming because of his cousin."   (T at 36-37). Investigator Deming instructed Swails to empty his pockets and then conducted a search of his person incident to the arrest. (T at 38).

At approximately 5:30 p.m., Investigator Deming advised Swails

of his <u>Miranda</u> rights. (T at 41-45).  In giving Swails his rights, Demming used an advice of rights form. (Government's Exhibit #3). Swails told Investigator Deming that he understood his rights and agreed to waive them.  (T at 41-44).  Swails told the officers that he "figured this was going to happen or he knew this was coming because of his cousin."  (T at 44).  Swails elaborated that "his cousin, Rod, had been making trips." (T at 44).  Swails also told the officers that there were at least four occasions where he had traveled with others to Houston, Texas to bring cocaine back to Rochester and that he was involved in the sale of narcotics in the Medina area.  (T at 84).

During the interview, Swails also told Investigator Deming about the location of some firearms.  (T at 46).  In an effort to assist law enforcement recover those weapons, Swails agreed to make several phone calls from the Orleans County Sheriff's Office to help arrange the surrender of firearms to law enforcement. (T at 46-47). The entire interview of Swails at the Orleans County Sheriff's Office lasted approximately two-and-one-half hours. Swails never requested an attorney.  (T at 45).

Because the weapons sought were in Rochester, Swails was handcuffed and driven to the Public Safety Building (PSB) in downtown Rochester.  (T at 47).  Upon arrival at the PSB, Swails's handcuffs were removed and he continued to voluntarily cooperate with the police by making further phone calls to arrange for the delivery of a firearm to his sister's house.  (T at 48).  Swails's

efforts were successful and the firearm was ultimately recovered. (T at 48).

Swails was cooperative during the entire interview process and was at the PSB for approximately two hours. (T at 49). During his PSB interview, Swails was offered food, drink and used the restroom twice. (T at 49). Deming testified that Swails never asked for counsel or indicated that he wanted to terminate or postpone the interview or his cooperation. (T at 49-50). After the firearm was recovered, the interview with Swails was terminated and he was turned over to the jail until then next day when he was afforded an initial appearance. (T at 51).

### Discussion

1. The Photo-Arrays: Defendant moves to suppress the fruits of the photographic arrays testified to by Agent Hayes. The Due Process Clause of the Fifth Amendment entitles individuals accused of crimes to protection against the use of evidence derived from unreliable identification procedures, including photographic displays. Moore v. Illinois, 434 U.S. 220, 227 (1977); Dunnigan v. Keane, 137 F.3d 117, 128 (2d Cir. 1998). In general, a pretrial photographic identification procedure violates due process if the procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Curry v. Burge, 2004 WL 2601681, *20 (S.D.N.Y. Nov. 17, 2004), quoting

Simmons v. United States, 390 U.S. 377, 384 (1968).

Having reviewed the photographic array used in the identification procedures, I find that it is not impermissibly suggestive and that the men pictured in the array have characteristics similar to Mr. Swails in terms of race, age, weight and facial hair. See United States v. Thai, 29 F.3d 785, 808-809 (2d Cir. 1994)(where photo array contained people of the same sex, race, hair color and approximate age, the array was not unduly suggestive). Any minor differences in the photographs are insufficient to cause the array to be impermissibly suggestive. See, e.g., United States v. Gibson, 135 F.3d 257, 260 (2d Cir. 1998)(even if defendant's picture was the only one in the array with a goatee, Court found it would not be unduly suggestive); United States v. Taveras, 1995 WL 600860, *6-7 (S.D.N.Y. Oct. 11, 1995)(even though defendant was the only partially bald person in the photo array, it was not unduly suggestive). Nor did I find that the procedures utilized by Agent Hayes in showing the arrays to the identifying witnesses to be suggestive or improper. United States v. Rosa, 11 F.3d 315, 330 (2d Cir. 1993)(where the photographic array was not impermissibly small and the government did not suggest any names or particular photos, the manner of the presentation was proper). Accordingly, it is my Report and Recommendation that Swails's motion to suppress the identification procedures be **denied**.

   2.  Swails's Statements: I find that any statements Swails made
to the police on December 2, 2004 should be admissible at trial.
First, I find that the statement Swails made prior to being given
Miranda warnings was spontaneous and not in response to any
interrogation by law enforcement.  See Rhode Island v. Innis, 446
U.S. 291, 300 (1982) (volunteered statements are admissible in
evidence and are not subject to Miranda safeguards).

   With regard to Swails's statements following his waiver of his
Miranda rights, I find that they should also be admissible.  It is
undisputed that Miranda warnings were given before Swails was
questioned, that he understood these warnings, voluntarily waived
his rights, and never requested an attorney.  Accordingly, Swails's
post-Miranda statements should also be admissible.  Nova v.
Bartlett, 211 F.3d 705, 708 (2d Cir. 2000)(confession made post-
Miranda was admissible at trial).

   During the hearing, the Court sua sponte raised the issue of
whether evidence obtained as a result of the proactive cooperation
of a defendant could thereafter be used against the cooperating
defendant. (T at 52-53).  Counsel agreed to brief the issue.  After
reviewing the relevant cases, I find that Swails's efforts at
proactive cooperation may be used against him at trial.  See United
States v. Wright, 971 F.2d 176, 178-180 (8th Cir. 1992)(where
defendant was arrested, given Miranda warnings, and then agreed to
cooperate with police and make phone calls, Court affirmed finding
that all of defendant's post-arrest statements were admissible);

United States v. Thomas, 2004 WL 3059794, *9 (S.D. Ind. December 16, 2004)(citing cases, court held that where defendant was lawfully arrested and waived his Miranda rights, telephone calls he made in an effort to cooperate could be used against him).

There was no evidence adduced at the hearing to suggest that the phone calls Swails made were the product of coercion or improper inducement.  Rather, the hearing evidence supports a finding that Swails was being "extremely cooperative" the night of his arrest. (T at 48).  According to Deming, Swails expressed interest in "getting a gun off the street" and Deming told Swails that if a gun was recovered, he would make the prosecutor aware of that fact.  (T at 75-76, 83).  Deming denied offering any consideration in exchange for Swails's cooperation (T at 75-78), but even if he had, "statements to the effect that it would be to a suspect's benefit to cooperate are not improperly coercive." United States v. Ruggles, 70 F.3d 262, 265 (2d Cir. 1995).  Simply put, there is no evidence that "the phone calls [were] anything other than voluntary." United States v. Thomas, 2004 WL 3059794 at *10.  See also United States v. Mast, 735 F.2d 745, 750 (2d Cir. 1984)("[i]nculpatory statements . . . are not involuntary merely because they are made in response to official requests to cooperate")(internal quotations and citations omitted); United States v. Morrill, 1998 WL 135819, *2 (W.D.N.Y. March 11, 1998)(defendant's self-serving motivation for cooperating does not render his cooperation invalid, nor his confession involuntary).

Finally, I find that Swails's arraignment on the day following his arrest did not constitute an unnecessary delay, which would render his statements involuntary.  Given that his cooperation in Orleans County did not conclude until 7:30 p.m., and his return to Rochester was not until well after business hours, it was reasonable for his initial appearance to be held on December 3, 2004.  <u>See</u>, <u>e.g.</u>, <u>United States v. Haouari</u>, 2000 WL 1593345, *5-7 (S.D.N.Y. Oct. 25, 2000)(where defendant was arraigned the day after his arrest, court noted that "time spent interviewing a defendant and transporting and processing him is not unnecessary or unreasonable delay").

For these reasons, it is my Report and Recommendation that Swails's motion to suppress his December 2, 2004 statements, including those statements made during proactive cooperation, should be **denied**.

<u>Conclusion</u>

Based on the foregoing, it is my Report and Recommendation that Defendant Swails's motions to suppress be **denied**.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: February **17**, 2006
       Rochester, New York

9

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R. Civ.P. 72(b) and Local Rule 72.3(a)(3).[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See e.g. Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Government and the Defendant.
**SO ORDERED.**

Jonathan W. Feldman
United States Magistrate Judge

Dated: February **17**, 2006
Rochester, New York

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. §3161(h)(1)(f) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).